IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 15-00779 HG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TIMOTHY CONWILL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT TIMOTHY CONWILL'S MOTION TO SUPPRESS EVIDENCE (ECF NO. 25)**

Defendant Timothy Conwill moves to suppress all evidence that the Government discovered in a package that Defendant mailed to himself.  Defendant contends that (1) Kauai Police Officer Brian Silva's use of a postal receipt to find the package exceeded the scope of a valid search incident to arrest; (2) Officer Silva held the package without any reasonable suspicion; and (3) the package was retained for an unreasonable length of time.

Defendant Conwill's Motion to Suppress Evidence (ECF No. 25) is **DENIED**.

**PROCEDURAL HISTORY**

Defendant Timothy Conwill is charged in the Indictment filed

1

on October 29, 2015 (ECF No. 16) with knowingly and intentionally attempt to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(A), and 846.

On January 15, 2016, Defendant filed a Motion to Suppress Evidence ("Defendant's Motion"). (ECF No. 25).

On January 25, 2016, the United States filed its Opposition to Defendant's Motion.  (ECF No. 28).

On January 29, 2016, the Court held a hearing on Defendant's Motion.  (ECF No. 31).

## ANALYSIS

Defendant Timothy Conwill ("Defendant" or "Defendant Conwill") moves to suppress all evidence obtained from a package that he mailed to himself on Thursday, July 30, 2015.  Defendant argues that the Government's discovery of evidence in the package was unlawful for three reasons.  First, Defendant states that Kauai Police Officer Brian Silva ("Officer Silva") exceeded the scope of a lawful search incident to arrest when he examined a postal receipt found in Defendant's possession and used it to locate the package.  Second, Defendant contends that Officer Silva held the package without reasonable suspicion.  Third, Defendant states that even if Officer Silva had reasonable suspicion, the Government retained the package for an

unreasonable length of time before acquiring a search warrant, in violation of the Fourth Amendment of the United States Constitution.

Kauai Police Officer Silva, Kauai Police Sergeant Danny Oliveira ("Sergeant Oliveira"), and United States Postal Inspector Brian Shaughnessy ("Postal Inspector Shaughnessy") testified at the hearing on Defendant Conwill's Motion to Suppress.  Officer Silva and Postal Inspector Shaughnessy each adopted their own declarations attached to the Government's Opposition to Defendant's Motion to Suppress.  Defendant did not put forward any testimony or other evidence controverting the witnesses' testimony.  The Court finds their testimony credible.

## I. OFFICER SILVA'S EXAMINATION AND USE OF DEFENDANT'S PARCEL RECEIPT WAS PART OF A VALID SEARCH INCIDENT TO ARREST

The Fourth Amendment of the United States Constitution provides that "the right of the people to be secure in their . . . effects, against unreasonable searches . . . shall not be violated."  U.S. Const. amend. IV.  Pursuant to the Fourth Amendment's command, warrantless searches are *per se* unreasonable, subject to certain "jealously and carefully drawn" exceptions.  Coolidge v. New Hampshire, 403 U.S. 443, 454–55 (1971)(internal quotations and citation omitted).  One exception to the general warrant requirement occurs when police conduct a

3

search incident to lawful arrest.  The exception allows officers
to search an arrestee's person and the area within his immediate
control.  United States v. Cook, 808 F.3d 1195, 1199 (9th Cir.
2015).  The search must be "spatially and temporally incident to
arrest."  Ibid. (internal quotations and citation omitted).

    The Supreme Court, in United States v. Robinson, established
that an officer conducting a search incident to arrest may
perform a "full search" of an arrestee.  414 U.S. 218, 235
(1973).  A "full search" generally includes the ability to
inspect personal property found in the arrestee's pockets.  Id.
at 236; United States v. Passaro, 624 F.2d 938, 944 (9th Cir.
1980) (holding that wallets are part of an arrestee's person and
therefore may be searched incident to arrest).  Riley v.
California, 134 S.Ct. 2473 (2014) deals with a more complex
issue, that of exempting cellular telephones from the search
incident to arrest exception.

**Officer Silva Suspected Defendant of Drug Trafficking**

    In May and June of 2015, Officer Silva received information
from more than two confidential informants that indicated
Defendant Conwill was sending methamphetamine from the island of
Oahu to the island of Kauai.  Specifically, the informants stated
that Defendant had been traveling into the Lihue Airport on Kauai
while transporting methamphetamine.  Officer Silva also received
information, provided to other Kauai police officers, that

implicated Defendant.  The informants had previously provided reliable information.

Officer Silva received further information from one of his informants.  The information was that on Thursday, July 30, 2015, Defendant Conwill would be dropped off at the Lihue Airport on Kauai.

Officer Silva testified that he was familiar with Defendant Conwill before hearing from the confidential informants. Defendant had two prior felony convictions, one for promoting a dangerous drug in the third degree and another for possession of drug paraphernalia in 2005.  Officer Silva was involved in the investigation of Defendant in a current, unrelated case that also involved methamphetamine trafficking.  The case was pending trial when Defendant failed to appear at a court hearing.  Defendant was wanted on an arrest warrant for that case.  Officer Silva went to the airport to arrest Defendant Conwill on that warrant and a second arrest warrant for another state court case.

Based on the confidential informants' tips, Defendant's history with drug trafficking, and Defendant's prior drug-related felony convictions, Officer Silva suspected that on Thursday, July 30, 2015, Defendant would be transporting illegal drugs to Kauai.

**Defendant's July 30, 2015 Trip to Honolulu**

At around noon on Thursday, July 30, Officer Silva saw

5

Defendant Conwill at the Lihue Airport.  Defendant boarded a
12:40pm flight to Honolulu, Oahu.  He did not appear to check any
luggage.  He had only a small carry-on bag.  Officer Silva
believed that Defendant would return with drugs to Kauai that
day.  He decided to await Defendant's return to Kauai.

**Defendant's Same-Day Return to Kauai**

At approximately 10:15 at night, Officer Silva saw Defendant
disembark from the Honolulu flight.  Defendant did not have any
checked luggage.  He was carrying the same small bag he had
earlier that day.

**Officer Silva's Search Incident to Arrest**

As Defendant left the Lihue Airport, Officer Silva
identified himself and arrested Defendant pursuant to the two
state warrants.

Officer Silva conducted a search incident to arrest of
Defendant Conwill.  He requested a drug detection dog to inspect
the carry-on bag.

During his search of Defendant's front-right pants pocket,
Officer Silva found a pack of cigarettes and a crumpled piece of
paper.  As he pulled the paper out of Defendant's pocket, Officer
Silva recognized it as a United States Postal Service ("USPS")
parcel receipt.  The parcel receipt was for a three-pound package
that had been sent that same day from the Honolulu Airport Post
Office, located at 3600 Aolele Street, at 3:08pm.  The package

6

was scheduled for delivery on Kauai the next day, Friday, July 31, at 3:00pm.  (Motion to Suppress Hearing Ex. 6).  Officer Silva recorded the parcel receipt's tracking number and retained the receipt.  Around the same time Officer Silva discovered the receipt, the drug detection dog alerted to Defendant's carry-on bag.  The bag was held pending acquisition of a state search warrant.  Law enforcement officers later obtained a search warrant and found $2,184 in Defendant's bag.

Defendant was held pursuant to the two state arrest warrants.

**Use of the Parcel Receipt to Locate Defendant's Package**

Following Defendant Conwill's arrest, at approximately 2:00am on Friday morning, July 31, Officer Silva visited the USPS sorting facility at the Lihue Airport.  Officer Silva testified that flights carrying mail to Kauai usually arrived in the early hours of the morning.  He wanted to locate the package that corresponded to Defendant's receipt before it left the airport sorting facility for delivery.

Officer Silva presented the tracking number he recorded from Defendant's receipt and asked that the package be located.  USPS personnel located the package roughly two hours after Officer Silva's 2:00am request.

7

**A. Officer Silva's Examination and Use of Defendant's Parcel Receipt was a Lawful Search Incident to Arrest**

Officer Silva was permitted to inspect the receipt for the parcel as a fruit of a search incident to lawful arrest. Robinson, 414 U.S. at 235-36 (police officer was permitted to unwrap a cigarette package found in the arrestee's coat pocket and seize gelatin capsules he thought contained heroin); Passaro, 624 F.2d at 944 (holding that officers could examine a document that listed relationships between milliliter, pound, and ounce quantities inside the defendant's wallet to discover evidence of crime). Defendant's receipt was probative evidence of criminal conduct. See United States v. Chang, No. CR06-376RSL, 2008 WL 623387, *5 (W.D. Wash. Mar. 3, 2008) (denying the defendant's motion to suppress a postal receipt seized from his wallet during a search incident to arrest, despite the fact that the receipt was "evidence of a crime other than that for which the defendant was arrested").

Officer Silva suspected that Defendant used his trip as a means to transport drugs. Multiple informants stated that Defendant Conwill had been traveling to Honolulu, on the island of Oahu, to transport drugs back to Kauai.

On his Thursday, July 30 trip to Oahu, Defendant left Kauai for less than ten hours. He did not travel with checked luggage. Despite the fact that he did not check any luggage, Defendant's

8

postal receipt stated that he mailed a three-pound package to himself in the middle of the day.  Moreover, the package was sent from the Honolulu Airport Post Office, on Oahu, via Express Mail. The receipt stated that the package was scheduled to be delivered the next day, Friday, July 31, on the island of Kauai, at 3:00pm.

The information Officer Silva obtained from the confidential informants, his investigation of Defendant in another methamphetamine trafficking case, Defendant's prior drug-related felony convictions, and the circumstances surrounding Defendant's short trip to Oahu, resulted in Defendant's postal receipt being highly suspicious.  See United States v. Berber-Tinoco, 510 F.3d 1083, 1087 (9th Cir. 2007).

In United States v. Hayes, law enforcement officers investigating a marijuana trafficking case discovered two USPS parcel receipts during a patdown of the defendant.  No. 2:11-CR-69, 2012 WL 6015814, *5 (W.D. Pa. Dec. 3, 2012), aff'd, 603 F. App'x 74 (3d Cir. 2015).  The officers examined the postal receipts and used them to successfully intercept one of the two corresponding parcels.  Id.  A search warrant for the parcel was obtained, and four-and-a-half kilograms of cocaine was found inside.  Id.  The district court denied the defendant's motion to suppress the receipt, applying the Supreme Court's decision in Robinson and holding that because the defendant was lawfully arrested, the police officers could conduct a full search of his

person.  Id. at *13.  As fruits of a lawful search, the postal
receipts could be examined for their evidentiary value.  Id. at
*13-14.

Officer Silva's examination and use of Defendant Conwill's
receipt is akin to the officers' actions in Hayes.  The Supreme
Court's holding in Robinson provides police officers with broad
discretion as to what they may do with information learned during
the course of a search incident to arrest.  See Robinson, 414
U.S. at 236 ("Having in the course of a lawful search come upon
the crumpled package of cigarettes, [the officer] was entitled to
inspect it").  The search incident to arrest exception permitted
Officer Silva to apply information he obtained from the parcel
receipt to his investigation of Defendant.

### B. **Riley v. California is Distinguishable**

Defendant relies on Riley, 134 S.Ct. 2473, to argue that
Officer Silva's examination of the parcel receipt was
unreasonable under the Fourth Amendment.  The holding in Riley
does not apply.

In Riley, the Supreme Court held that officers generally
need a warrant before reviewing the digital contents of a
cellular telephone.  Id. at 2485.  The Court recognized that
cellular telephones "differ in both a quantitative and
qualitative sense from other objects that might be kept on an

arrestee's person." Id. at 2489.  Modern cellular telephones
serve as mobile repositories of people's lives.  Id.  Data stored
in cellular telephones can reveal where a person has been, which
internet websites he has visited, who he is in a relationship
with, and the date of his next medical appointment.  Id. at 2489-
90.  The same cannot be said of information found on a postal
receipt.  Defendant's receipt listed when and where the package
was shipped from, the weight of the package, its expected
delivery date, the cost of shipping, and the destination city and
zip code.  It was not the kind of private repository of
voluminous information that the Supreme Court was concerned about
in Riley.

A cellular telephone can function as a window into a
person's entire life.  Id.  As the Court in Riley observed, the
examination of an ordinary physical object presents a
significantly lesser threat to an individual's privacy interests
than the examination of a cellular telephone.  Id. at 2489.

## II. OFFICER SILVA'S RETENTION OF THE PACKAGE WAS SUPPORTED BY REASONABLE SUSPICION

### A. Defendant's Possessory Interest in the Package

The Ninth Circuit Court of Appeals has held that a sender
has a possesory interest in the timely delivery of a package.
Any retention or diversion that does not affect the timeliness of

11

delivery does not raise Fourth Amendment issues.  <u>United States</u> <u>v. Jefferson</u>, 566 F.3d 928, 934 (9th Cir. 2009).  "Before the guaranteed delivery time, law enforcement may detain such a package for inspection purposes without any Fourth Amendment curtailment."  <u>Id.</u> at 934-35.  After the guaranteed delivery time passes, "the constitutional chemistry" changes, and law enforcement officers must have, at a minimum, reasonable suspicion to continue holding the parcel.  <u>Id.</u> at 934 (quoting <u>United States v. LaFrance</u>, 879 F.2d 1, 7 (1st Cir. 1989)).

### B. Officer Silva's Investigation of the Package

At approximately 4:30am on Friday, July 31, Officer Silva saw Defendant's package at the USPS Lihue Airport sorting facility.  Officer Silva noticed that the package displayed four suspicious characteristics.  First, it was heavily taped at the seams.  (Hearing Ex. 2).  Second, its label was handwritten.  (Hearing Exs. 2; 3).  Third, the label stated that Defendant sent the package to himself, from Oahu to Kauai, on the same day that he traveled to Oahu and back to Kauai.  (Hearing Ex. 3).  Fourth, the package was sent via one-day Express Mail.  (<u>Ibid.</u>)

After recognizing the package's suspicious nature, Officer Silva held the package for further investigation.  He then called Kauai Police Officer Aaron Relacion ("Officer Relacion") to bring a drug detection dog to conduct a sniff of the package.

At approximately 5:00am, Officer Relacion and a drug detection dog arrived.  The dog alerted to Defendant's package. The package was retained until a search warrant could be obtained.

## C. Officer Silva did not Impede Defendant's Possessory Interest in the Package

The Ninth Circuit Court of Appeals's holding in <u>Jefferson</u> is relevant to Defendant Conwill's claim.  The location of the package by USPS personnel that Defendant challenges occurred at approximately 4:30am on Friday, July 31, ten-and-a-half hours before the package's scheduled delivery.  By approximately 5:00am, a drug detection dog alerted to the package.  The dog's alert provided probable cause to hold the package beyond the afternoon 3:00pm expected delivery.  <u>United States v. Lozano</u>, 623 F.3d 1055, 1061 (9th Cir. 2010) ("The relevant time period is that between the initial detention and that at which probable cause is developed because '[p]robable cause is sufficient to support the subsequent detention of the package'.") (quoting <u>Hoang</u>, 486 F.3d at 1160 n. 1).  Pursuant to <u>Jefferson</u>, Officer Silva's investigation of the package did not interfere with Defendant's possessory interest in the timely delivery of the package.  <u>Jefferson</u>, 566 F.3d at 934.

13

**D. Officer Silva had Reasonable Suspicion to Hold the Package**

Even if the <u>Jefferson</u> holding did not apply, the Court finds that Officer Silva had reasonable suspicion to hold the package.

A law enforcement officer has reasonable suspicion if the totality of the circumstances indicates that there is a particularized and objective basis for suspecting legal wrongdoing. <u>Hernandez</u>, 313 F.3d at 1210 (citing <u>United States v. Arvizu</u>, 534 U.S. 266, 273, (2002)). In the context of parcel intercepts, courts generally require an officer to establish reasonable suspicion that the parcel contains contraband or evidence of illegal activity. <u>Hernandez</u>, 313 F.3d at 1210.

The totality of circumstances analysis requires an evaluation of facts "as they would be understood by those versed in the field of law enforcement." <u>Ibid.</u> (internal quotations and citation omitted). The facts of a case are considered holistically. An isolated fact's inability to establish reasonable suspicion is not dispositive, as courts consider the cumulative effect of all relevant facts. <u>United States v. Palos-Marquez</u>, 591 F.3d 1272, 1278 (9th Cir. 2010).

Officer Silva had reasonable suspicion to believe that the package contained illegal drugs for four key reasons. First, he learned from reliable confidential informants that Defendant was believed to be transporting illegal narcotics from Oahu to Kauai.

14

Second, Defendant's suspicious conduct on Thursday, July 30, suggested he was engaged in drug trafficking.  Third, Defendant had a history of drug-related acts.  Fourth, the physical characteristics of the package indicated that it contained narcotics.

### 1. Information From Confidential Informants

Information retrieved from a reliable confidential informant may provide a basis of reasonable suspicion.  United States v. Rowland, 464 F.3d 899, 907 (9th Cir. 2006).  The overarching test of an informant's reliability is his "'veracity' or 'reliability' and his 'basis of knowledge'."  Ibid. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

The Ninth Circuit Court of Appeals considers several factors when determining an informant's reliability.  Rowland, 464 F.3d at 907.  The factors include whether the informant is known or anonymous, whether there is a track record of reliability, whether the informant reveals the basis for his knowledge, and whether there is predictive detail about future events that can be corroborated by police.  Id. at 907-08.  There is no rigid test; a court must look to the totality of the circumstances when determining an informant's reliability.  Gates, 462 U.S. at 238.

The information Officer Silva received from his confidential informants supported a basis of reasonable suspicion.  Officer

Silva testified that his confidential informants had previously proven themselves to be credible.  Officer Silva and other members of the Kauai Police Department knew the informants.  More than two informants stated that Defendant was traveling from Oahu to Kauai while transporting methamphetamine.  One informant specifically stated that on Thursday, July 30, 2015, Defendant would be dropped off at the Lihue Airport.

The totality of the circumstances demonstrates that Officer Silva's confidential informants were reliable.  See United States v. Sandoval, No. CR-10-02991-TUC-CKJ, 2011 WL 3349066, *4 (D. Ariz. Aug. 3, 2011), aff'd, 538 F. App'x 821 (9th Cir. 2013) (informant's detailed description of a truck carrying drugs supported a finding of reasonable suspicion, despite the fact that the district court did not hear evidence about how the informant came to know about the information).  The informants provided Officer Silva with a basis upon which he could form reasonable suspicion.

## 2. Defendant's Suspicious Conduct

Law enforcement officers may form reasonable suspicion by applying their own professional experience and training to make inferences about the situations before them.  Arvizu, 534 U.S. at 273-74.  Experience and training provide officers with the ability to see through facts that are innocent in isolation but

16

incriminating when considered collectively.  <u>Berber-Tinoco</u>, 510 F.3d at 1087.

Officer Silva testified that Defendant's conduct on Thursday, July 30, was suspicious.  Defendant left Kauai for less than ten hours.  <u>See</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 9 (1989) (acknowledging that trips of short duration can be suspicious in the totality of circumstances).  He returned from Oahu late at night.  Officer Silva stated that "persons who transport illegal drugs via airports[] usually come in on early flights or late evening flights to try and evade police." (Silva Decl. at ¶2, ECF No. 28-2).

Defendant Conwill did not check luggage on his trip.  Yet, he mailed a three-pound package to himself on Kauai from the Honolulu Airport Post Office just seven hours before he returned to Kauai.  <u>See</u> <u>United States v. Malone</u>, 886 F.2d 1162, 1164-65 (9th Cir. 1989) (holding that a lack of luggage is probative towards the court's reasonable suspicion determination).

Defendant brought a carry-on bag on his trip.  The bag, however, was suspicious as well.  A drug detection dog alerted to it at the time of Defendant's arrest.  The dog's alert provided probable cause to believe the bag contained contraband or evidence of illegal activity.  <u>Hoang</u>, 486 F.3d at 1160 n. 1.

### 3. Defendant's History of Drug-Related Acts

17

Law enforcement officers may review a person's criminal history as part of their holistic analysis of whether a reasonable basis for suspicion exists.  United States v. Cotterman, 709 F.3d 952, 968 (9th Cir. 2013) ("Although a prior criminal history cannot alone establish reasonable suspicion . . . it is permissible to consider such a fact as part of the total calculus of information").

Officer Silva testified that prior to arresting Defendant, he knew Defendant Conwill had two prior felony convictions.  One conviction was for promoting a dangerous drug in the third degree and another for possession of drug paraphernalia in 2005.  In addition, Officer Silva was involved in the investigation of Defendant in a current, unrelated case that also involved methamphetamine trafficking.  The case was pending trial when Defendant failed to appear at a court hearing.  Defendant was wanted on an arrest warrant for that case.  Officer Silva also knew that Defendant was wanted on a second arrest warrant for another state court case.

Officer Silva's knowledge of Defendant's history of drug-related acts provided an additional basis for finding reasonable suspicion that Defendant's package contained illegal narcotics.

**4. Officer Silva's Observations of the Package**

In addition to receiving reliable tips from confidential

18

informants, knowing Defendant's drug-related history, and analyzing Defendant's conduct, Officer Silva applied his observations of the package to establish reasonable suspicion.

A parcel's physical characteristics may provide a law enforcement officer with reasonable suspicion to retain the parcel. See, e.g., Hernandez, 313 F.3d at 1211-12; United States v. Colon, 386 F. App'x 229, 231 (3d Cir. 2010). The officer must be able to identify specific characteristics that are suspicious, rather than point to a mere generalized profile of the parcel. United States v. Dennis, 115 F.3d 524, 532 (7th Cir. 1997).

Officer Silva recognized that Defendant's package possessed multiple suspicious characteristics. He testified that the package was heavily taped at the seams, which indicated an attempt "to conceal the scent of the contraband from narcotics detector dogs." Hernandez, 313 F.3d at 1211. The package label was handwritten. Ibid. ("traffickers usually send packages of drugs from one individual to another with handwritten labels, instead of from one business to another with printed labels"). It listed Defendant as both the sender and the recipient. Cf. United States v. Morones, 355 F.3d 1108, 1110 (8th Cir. 2004) (holding that an identical last name for both the sender and recipient on a parcel supported a finding of reasonable suspicion). It was shipped via Express Mail, a service favored by drug traffickers. Hernandez, 313 F.3d at 1211 (observing that

19

"drug traffickers often use express mail because they can track packages easily and the drugs generally arrive quickly and predictably").

The sum of the package's characteristics provided a basis upon which Officer Silva formed reasonable suspicion to believe that the package contained illegal drugs. See United States v. Huerta, 655 F.3d 806, 810 (8th Cir. 2011) (holding that a package's individual characteristics may have been innocent in isolation, but provided reasonable suspicion when considered as part of the totality of the circumstances).

The totality of circumstances regarding the confidential informants' tips, Defendant's conduct, his prior drug convictions and history of drug-related acts, and the package's physical characteristics, establishes that Officer Silva had a reasonable suspicion to believe that the package contained illegal drugs.

## III. THE GOVERNMENT'S ACTIONS TO OBTAIN A SEARCH WARRANT FOR THE PACKAGE WERE REASONABLE

An unreasonable delay between the retention of a package and acquisition of a search warrant may violate the Fourth Amendment. United States v. Sullivan, 797 F.3d 623, 633 (9th Cir. 2015). Courts determine reasonableness by examining the totality of the circumstances surrounding each component of the delay.

<u>Hernandez</u>, 313 F.3d at 1213.  The focus rests on the diligence of law enforcement officials.  <u>United States v. Dass</u>, 849 F.2d 414, 415 (9th Cir. 1988).

**Return of the Package to the Honolulu Postal Inspectors' Office**

Officer Silva testified that on Friday, July 31, 2015, at approximately 4:30am, he held Defendant's package for further investigation.  Officer Silva had been continuously working on the investigation of Defendant since 11:00am the day before, Thursday, July 30.

At around 5:00am on Friday, July 31, Kauai Police Officer Relacion brought a drug detection dog to the Lihue, Kauai Airport sorting facility.  The dog alerted to Defendant's package.  Upon observing the dog's alert, Officer Silva instructed Kauai island Police Officer Arnold Cayabyab ("Officer Cayabyab") to brief the United States Postal Inspection Service.  Officer Silva, Sergeant Oliveira, and Postal Inspector Shaughnessy testified that the Kauai Police officers needed to collaborate with the Oahu island based United States Postal Inspection Service, as postal inspectors have exclusive authority over securing warrants for items in the United States mail system.

Later in the morning of Friday, July 31, Officer Cayabyab contacted Postal Inspector Shaughnessy.  Postal Inspector Shaughnessy instructed USPS personnel to send the package to the Honolulu Postal Inspectors' office, on the island of Oahu, for

further examination.  Redirecting the package to Honolulu was necessary.  Postal Inspector Shaughnessy testified that all of the postal inspectors who are assigned to Hawaii are stationed in Honolulu.  No postal inspectors are positioned on any of the outer islands.

USPS personnel shipped Defendant's package back to Honolulu on Friday, July 31.

**Officer Relacion's Affidavit**

On Kauai, in the early afternoon of Friday, July 31, Officer Relacion prepared a one-page affidavit summarizing Defendant's arrest and the drug detection dog's alert to the package.  It was Officer Relacion's first investigation of a parcel in the United States mail system.  He e-mailed a copy of his affidavit to his supervisor, Sergeant Oliveira.

In the morning of Sunday, August 2, Sergeant Oliveira forwarded Officer Relacion's affidavit to United States Postal Inspector Jensen Rodrigues ("Postal Inspector Rodrigues"). (Hearing Ex. 7).  The affidavit, however, was found not to be sufficiently detailed by Postal Inspector Rodrigues.  He informed Sergeant Oliveira that he needed a comprehensive affidavit that thoroughly described the dog alert to the package and the circumstances of Defendant's arrest.  (Ibid.)

**Postal Inspector Shaughnessy's Examination of the Package**

At approximately 12:00pm on Sunday, August 2, Postal

22

Inspector Shaughnessy retrieved Defendant's package from the Honolulu Airport Post Office.  He examined its exterior and noticed the same suspicious characteristics that Officer Silva observed.  Postal Inspector Shaughnessy was unable to create a warrant application, however, as he had not yet received a declaration with a complete synopsis of events relating to the package.

**Officer Relacion's Revised Affidavit**

Sergeant Oliveira testified that on Monday, August 3, he instructed Officer Cayabyab to help Officer Relacion draft a revised affidavit.  Officer Cayabyab was a veteran canine officer who had significant experience with writing affidavits for search warrant applications.

Officer Relacion drafted a revised affidavit that included substantially greater detail about the package and the procedures he employed when he worked with the drug detection dog.

**The Postal Inspectors' Operation on Maui**

Postal Inspector Shaughnessy stated in his declaration that five postal inspectors are assigned to work in the State of Hawaii: a team leader and four field inspectors.  The postal inspectors are all stationed in Honolulu, Oahu, but have the responsibility to investigate cases on all of the Hawaiian islands.  Three of the postal inspectors - Andrew Cha ("Postal Inspector Cha"), Shaughnessy, and Rodrigues - are assigned to

investigate the trafficking of illegal substances through the mail.

Postal Inspector Shaughnessy stated that on Monday, August 3, all three Postal Inspectors, Cha, Shaughnessy, and Rodrigues, were on Maui to facilitate an unrelated drug trafficking interdiction.  Maui law enforcement officials were unable to dedicate a significant amount of resources to the operation.  As a result, the postal inspectors were required to be on Maui for the entire day, and could not devote their attention to the search warrant application for Defendant's package.

**The Search Warrant is Issued**

In the early morning of Tuesday, August 4, Sergeant Oliveira forwarded Officer Relacion's revised affidavit to Postal Inspector Rodrigues.  (Hearing Ex. 8).

At 1:30pm on Tuesday, August 4, Postal Inspector Shaughnessy filed a search warrant application for the package.  The search warrant application included Officer Relacion's revised affidavit as an attachment.  (Hearing Ex. 4).

On that same day, at 5:26pm, Tuesday, August 4, a Magistrate Judge issued a search warrant as to Defendant's package.  (Ibid.)

**A. The Delay Caused by the Government's Actions to Obtain a Search Warrant was Reasonable**

The totality of the circumstances demonstrates that the

24

duration of the Government's retention of the package was reasonable.   The law enforcement officers involved in obtaining a search warrant for the package acted diligently.

### 1. Return of the Package to Honolulu

The return of Defendant's package to Honolulu was reasonable.   Kauai police officers were unable to independently seek a state search warrant for the package.   They understood that only federal agents may apply for a search warrant of parcels within the United States mail system.   The United States Postal Inspection Service is located in Honolulu, on the island of Oahu.   Postal Inspector Shaughnessy testified that all of the postal inspectors assigned to Hawaii are stationed in Honolulu. Enforcing drug laws in remote communities often requires law enforcement to reroute suspicious packages to cities with greater resources.   United States v. Lozano, 623 F.3d 1055, 1061 (9th Cir. 2010).   The time consumed in transferring Defendant's package from Kauai to Honolulu "simply reflects the facts of life" in the Hawaiian islands.   United States v. Aldaz, 921 F.2d 227, 231 (9th Cir. 1990).

### 2. Officer Relacion's Affidavit

Any delay caused by the added time Officer Relacion needed to write a thorough affidavit was reasonable.   The investigation

of Defendant's package required close coordination between the Kauai Police Department and the Oahu-based United States Postal Inspection Service.  The postal inspectors needed an affidavit that detailed the circumstances of Defendant's arrest and the drug detection dog's sniff of the package.  The Ninth Circuit Court of Appeals has recognized that the fulfillment of administrative requirements for a search warrant is legitimate reason for a delay.  <u>Ibid.</u>  In addition, delays caused by the logistical demands associated with inter-agency operations are generally reasonable.  <u>United States v. Adams</u>, 176 F.3d 485, *1 (9th Cir. 1999) (unpublished op.) (five-day delay that included a weekend, involved multiple law enforcement agencies, and a primary investigator who was also working on another high-priority case, was reasonable).

Sergeant Oliveira testified that Officer Relacion was inexperienced at writing search warrant affidavits.  Inexperience alone does not correlate to carelessness.  <u>See United States v. McFarley</u>, 789 F. Supp. 705, 719-20 (W.D. N.C. 1992) (finding that a delay caused by an officer's inexperience was reasonable, as the officer acted with diligence and due care).  Officer Relacion conscientiously worked to write an affidavit that would be sufficient to support a search warrant application.  The evidence presented establishes that Sergeant Oliveira and Officer Cayabyab dutifully assisted Officer Relacion's efforts.

26

### 3. The Postal Inspectors' Maui Operation

The Ninth Circuit Court of Appeals has held that competing demands from unrelated cases is a reasonable cause for the prolonged retention of a parcel.  <u>Hernandez</u>, 313 F.3d at 1214; <u>Adams</u>, 176 F.3d at *1 (unpublished op.).  Postal Inspector Shaughnessy testified that on Monday, August 3, the postal inspectors were required to participate in a drug trafficking interdiction on Maui and were therefore unavailable on Monday to secure a search warrant.  The one-day delay caused by the Maui operation was reasonable.

The evidence presented demonstrates that the law enforcement officers diligently worked to coordinate their efforts and obtain a warrant application as soon as practicable.  Their work spanned early mornings, evenings, overnight activities, and the weekend. <u>See</u> <u>United States v. Gill</u>, 280 F.3d 923, 929 (9th Cir. 2002) ("Nor is it insignificant that the investigation began the end of one week and was completed at the beginning of the following week").  The length of the Government's retention of the package was a direct result of the care law enforcement officers took to document the information necessary for a search warrant application.  <u>United States v. Lane</u>, 62 F.3d 1426, *2 (9th Cir. 1995) (unpublished op.) ("Because the length of the detention

27

flowed directly from the care the postal inspector took to establish and document probable cause to search, we cannot say the delay was unreasonable"). The duration between Officer Silva's investigation of the package and the Magistrate Judge's issuance of a search warrant was reasonable under the totality of circumstances.

## CONCLUSION

(1) Officer Silva's examination and use of Defendant's postal receipt was within the scope of a valid search incident to arrest.

(2) Officer Silva had reasonable suspicion to hold the package for further investigation.

(3) The duration between Officer Silva's investigation of the package and the Magistrate Judge's issuance of a search warrant was reasonable under the totality of circumstances.

//

//

//

//

//

//

//

Defendant Timothy Conwill's Motion to Suppress Evidence (ECF No. 25) is **DENIED**.

IT IS SO ORDERED.

DATED:    Honolulu, Hawaii, March 21, 2016.



_____

Helen Gillmor
United States District Judge